MERCANTILE CONTRACT PURCHASE CORPORATION, Respondent, v. MELNICK and others, Defendants: STARICH and wife, Appellants.

*No. 260. Argued June 2, 1970.—Decided June 26, 1970.*
(Also reported in 177 N. W. 2d 858.)

For the appellants there was a brief and oral argument by *John A. Udovc* of Milwaukee.

For the respondent there was a brief by *Foley & Lardner* and *James O. Huber,* all of Milwaukee, and oral argument by *Mr. Huber.*

CONNOR T. HANSEN, J. Appellants sought to intervene in this mortgage foreclosure action, claiming they had been assured by Melnicks and Kaminsky that the sum of $20,000 would release any mortgages and interest of Auto Acceptance in Parcel III. This assertion is based on a letter to that effect which Melnicks produced at the time the land contract was executed and was from Auto Acceptance, signed by Harry W. Kaminsky and addressed to Stanley Melnick. Appellants allege they

relied upon this representation and suffered damages in the amount of $30,000, representing their present equity. The appellants argue they should be allowed to intervene and confirmation of the sale should be stayed to permit a determination of whether Auto Acceptance was the real or apparent agent for the plaintiff. Auto Acceptance and Melnicks apparently are insolvent and Kaminsky is dead.

Plaintiff claims the affidavits and pleading which appellants submitted are not sufficient to raise an issue of agency since they recite ultimate facts rather than evidentiary facts and because they are based on information and belief. However, appellants' counterclaim does recite that Kaminsky and Auto Acceptance was "an agent of plaintiff" and this court has held such a general statement to be a sufficient allegation of an agency relationship to bring it into issue.

"The Wisconsin statutes state in sec. 263.03 that a complaint shall contain:

" '(2) A plain and concise statement of the ultimate facts constituting each cause of action, without unnecessary repetition.'

"In light of the above we hold that an allegation of an agency relationship and an allegation of authority as pleaded in the amended complaint are deemed admitted by demurrer." *Herro v. Wisconsin Federal Surplus Property Development Corp.* (1969), 42 Wis. 2d 87, 105, 166 N. W. 2d 433.

Therefore, the results of this case do not turn on any deficiency of pleadings or affidavits, but whether the trial court erred in refusing to allow appellants to intervene in this mortgage foreclosure action.

Appellants' argument on appeal is essentially the same one put forth before the trial court, *i.e.*, that sec. 281.03 (1), Stats.,[1] does not apply to a purchaser in actual

---

[1] "281.03 **Lis pendens; who may file; effect; when void; discharge.** (1) In an action where the complaint contains a legal description of real estate and seeks relief in respect to the title

possession. Appellants further urge that they were in such actual possession [2] and, therefore, their failure to record their land contract until after the filing of the *lis pendens* does not preclude their intervention.

On the other hand, plaintiff contends appellants are bound by sec. 281.03 (1), Stats., since it had no actual knowledge of appellants' land contract interest prior to the filing of plaintiff's *lis pendens* and because the alleged possession of Parcel III is insufficient to remove them from application of sec. 281.03 (1). However, an analysis of the *lis pendens* statute as interpreted by this court in *J. & S. Corp. v. Mortgage Associates, Inc.*

thereto, after the filing of the complaint the plaintiff shall file in the office of the register of deeds of each county where any part thereof is situated, a lis pendens containing the names of the parties, the object of the action and a description of the land in that county affected thereby. In any action, if the defendant asks relief on a counterclaim or cross-complaint, which contains a legal description of real estate and seeks relief in respect to the title thereto, after the filing of the counterclaim or cross complaint he shall file a lis pendens. From the time of such filing every purchaser or encumbrancer whose conveyance or encumbrance is not recorded or filed shall be deemed a subsequent purchaser or encumbrancer and shall be bound by the proceedings in the action to the same extent and in the same manner as if he were a party thereto. In any such action in which a lis pendens has been filed, if the party filing the same shall fail for one year after the filing thereof to serve and file proof of service of the summons or the counterclaim or cross-complaint on one or more of the adverse parties, said notice shall be void, and upon motion and proof the court may order such notice struck from the files. Judgment shall not be entered in favor of the party required to file lis pendens until 20 days after the lis pendens has been filed."

[2] Appellants argue actual possession, occupancy and control was manifested in an open, visible manner by:

"(a) Collecting the rents from the 19 tenants;

"(b) Maintaining an office in the building itself;

"(c) Overseeing the maintenance;

"(d) Hiring a manager;

"(e) Paying the first mortgage payment every month faithfully to Milwaukee Federal Savings & Loan Association;

"(f) Executing the leases and giving and receiving notices."

(1969), 41 Wis. 2d 418, 164 N. W. 2d 221, reveals that the filing of a *lis pendens* does not relieve a plaintiff of all obligation to ascertain the identity of those who have an interest in the property when bringing a mortgage foreclosure action, but is still required to ascertain the identity of all interested parties in the same manner in which notice is imparted to a subsequent good faith purchaser.

"The rationale behind the *lis pendens* statute was explained:
" 'The legislature understood, as well as anyone else, that parties secretly holding title or liens could not be known to the plaintiff, could not be made parties, could not be served, and the question was how to cut them off from asserting their interest after a judgment against the persons appearing of record as the only ones having any interest. The plain way to accomplish this end was to declare that all parties with unrecorded interests should be bound by a judgment against those whose interests were known or appeared of record. It was the application in another way of the doctrine that the party who fails to record his title shall be estopped from asserting it against a subsequent good faith purchaser. The legislature, in the use of an undoubted power, exercised its right to say that a party who failed to place of record any interest held by him in real estate should be bound by a judgment entered in an action involving such property, where the record owners were made parties. In other words, the purchaser of real estate, under a decree of court in which a *lis pendens* has been filed, takes title paramount to any conveyance or incumbrance not known to the plaintiff or found of record when the *lis pendens* was filed; and this upon the same theory that a subsequent good faith purchaser acquires good title against a prior conveyance which was not of record when the second party made his purchase.' *Munger v. Beard, supra,* pages 770, 771." *J. & S. Corp. v. Mortgage Associates, Inc., supra,* pages 424, 425.

Premising the filing of a *lis pendens* on the same theory as a subsequent good faith purchaser brings to bear what this court has stated concerning the obliga-

tions of good faith purchasers and renders that criteria applicable to a plaintiff attempting to ascertain interested parties in a foreclosure proceeding. *Bump v. Dahl* (1965), 26 Wis. 2d 607, 133 N. W. 2d 295, 134 N. W. 2d 665. *See also: Coe v. Manseau* (1885), 62 Wis. 81, 22 N. W. 155.[3]

In this case an affidavit was submitted in opposition to appellants' motion to intervene wherein Leonard Kovitz, plaintiff's associate general counsel and assistant secretary, stated that neither he nor any other representative had any actual knowledge or was advised by anyone of appellants' alleged land contract prior to August 2, 1967, and that neither appellant communicated with Kovitz, nor any other agent or representative of plaintiff, regarding their interest in Parcel III. On the other hand, nowhere is it alleged that any of plaintiff's representatives made an effort to ascertain from the tenants of Parcel III what their interests were in the property. The facts alleged by appellants make it clear that such an inquiry would have disclosed appellants' interest in the property. In addition, by the time plaintiff filed its amended summons and complaint it had notice of appellants' interest by virtue of the land con-

---

[3] Notice from possession is also defined by statute:

"235.491 **Notice of conveyance from the record.** . . .

"(2) NOTICE OF PRIOR CLAIM. A purchaser has notice of a prior outstanding claim or interest, within the meaning of this section wherever, at the time such purchaser's interest arises in law or equity:

"(a) *Affirmative notice.* Such purchaser has affirmative notice apart from the record of the existence of such prior outstanding claim, including notice, actual or constructive, arising from use or occupancy of the real estate by any person at the time such purchaser's interest therein arises, whether or not such use or occupancy is exclusive; but no constructive notice shall be deemed to arise from use or occupancy unless due and diligent inquiry of persons using or occupying such real estate would, under the circumstances, reasonably have disclosed such prior outstanding interest; nor unless such use or occupancy is actual, visible, open and notorious; . . ."

tract being recorded on August 16, 1967. We do not, however, infer that a party about to foreclose a mortgage on a multiple dwelling unit must make inquiry of every tenant in order to ascertain possible unrecorded interests in the real estate. Nevertheless, under the facts herein presented, plaintiff had a duty to make some effort to ascertain the interests of those in possession of Parcel III, and if plaintiff's lack of inquiry were the only consideration then appellants' motion should have been granted. There is, however, another side of this case.

As previously noted, the filing of a *lis pendens* is premised on the same theory of notice that is applicable to a good faith purchaser; in addition, however, the function of a *lis pendens* is to protect the rights of holders of interests in land by giving them the opportunity to inform themselves and make themselves parties to an action without prejudice to a plaintiff.

". . . The thought of the legislature in providing for a notice to be filed with the register of deeds undoubtedly was to protect the interest of secret owners or lien holders so far as might be done without prejudice to the plaintiff, and to allow them to come into court and have their rights adjudicated. Realizing that owners of secret interests could not be known to the plaintiff, and that they could not be made parties or served with process, in order to protect them, so far as could be done with justice to the plaintiff, the statute, as amended, requires the plaintiff to file with the register of deeds a notice of the action containing 'the names of the parties, the object of the action, and a description of the property sought to be affected thereby,' thus putting of record in the office where such third person's conveyance ought to appear, and where he would be most likely to discover it, a notice that the property in which he may have an interest is in litigation, and giving him the opportunity to inform and make himself a party to the action and to have his rights determined before closing his mouth." *Munger v. Beard* (1907), 79 Neb. 764, 772, 113 N. W. 214, 217.

On appeal, appellants admit they are required to take automatic notice of plaintiff's action from the time the *lis pendens* was filed on August 2, 1967. Nevertheless, appellants did nothing to intervene in the lawsuit until May 22, 1969, even though they recorded their land contract on August 16, 1967, which was subsequent to the filing of the *lis pendens*. In addition, judgment of foreclosure was duly entered and docketed on October 29, 1968, over one year after plaintiff first filed a *lis pendens*.

"Matters Concluded.—As a general rule, a mortgagor and his privies are concluded by the decree as to all defenses which he might have interposed, but did not— such as payment, usury, the invalidity of the mortgage, or fraud in the execution of the mortgage. If through negligence a defendant, when the mortgage is foreclosed, fails to set up a separate title claimed by him in the mortgaged premises, such as a title by adverse possession, he may be estopped by the decree of foreclosure from setting up such title in subsequent proceedings thereafter instituted between the parties. Similarly, a decree foreclosing a mortgage upon land is conclusive of the right of a party alleged to have some interest in or lien upon the land to claim improvements attached to the realty as chattels under an agreement with the mortgagor." 37 Am. Jur., *Mortgages,* pp. 77, 78, sec. 594.

It is clear that neither plaintiff nor appellants fully recognized the purpose and duties contained in sec. 281.03 (1), Stats., nor were their actions governed by the requirements and demands of that statute. We, therefore, are of the opinion that this case does not turn on an interpretation of sec. 281.03 (1), but on whether the trial court abused its discretion in denying appellants' motion to intervene. In arriving at this decision, we chronologically set forth the dates of the actions of the parties which we consider significant:

May 4, 1964: Melnick to Auto Acceptance mortgage executed and assigned to plaintiff.

May 8, 1964: Mortgage and assignment recorded.

May 31, 1966: Melnick-Starich land contract executed and delivered.

August 2, 1967: Instant mortgage foreclosure action commenced and *lis pendens* filed.

August 16, 1967: Melnick-Starich land contract recorded.

March 15, 1968: Amended summons and complaint in mortgage foreclosure served.

October 29, 1968: Judgment of foreclosure entered and docketed, and second *lis pendens* of plaintiff filed.

April 21, 1969: Approximate date appellants allege they first learned of foreclosure action.

May 5, 1969: Foreclosure sale.

May 22, 1969: Appellants bring motion subject to this appeal. We conclude that the trial court correctly denied appellants' motion.

"**Intervention.** If in an action for the recovery of property, a person not a party has an interest in the property, or if in any other action, a person not a party has such an interest in the subject matter of the controversy as requires him to be a party for his own protection, and such person applies to the court to be made a party, the court may order him brought in. The motion shall be accompanied by a complaint or answer stating the cause of action or defense desired to be interposed. If the motion is granted the court shall indicate in its order the existing parties on whom the pleading should be served, and the time within which it should be served. If answer or reply is proper, the party served shall have 20 days in which to answer or reply." Sec. 260.205, Stats.

". . . . Generally in construing statutes, 'may' is construed as permissive and 'shall' is construed as mandatory unless a different construction is demanded by the statute in order to carry out the clear intent of the legislature. *Scanlon v. Menasha* (1962), 16 Wis. (2d) 437,

114 N. W. (2d) 791." *Wauwatosa v. Milwaukee County* (1963), 22 Wis. 2d 184, 191, 125 N. W. 2d 386.[4]

In this case, appellants did not avail themselves of the notice provided by the filing of the *lis pendens*. In addition, appellants have alleged in affivadits that they first knew of the foreclosure action in the spring of 1969, when they were informed there would be a foreclosure sale in "the next week or two." The sale was on May 5, 1969, and it was not until May 22, 1969, that appellants brought their motion to intervene. The conclusion of the trial court that the appellants' petition should be denied was stated as follows:

". . . . On the other hand, the petitioners knew of Mercantile's pending foreclosure action and could easily . have moved to intervene rather than to do nothing about recording their interest for some 18 months.

". . . .

"Thus, the court finds that the petitioners were unknown to the plaintiff Mercantile at the time it filed its *lis pendens*. The court is of the opinion that to grant petitioners' motion to intervene would encourage parties secretly to hold title or liens until after filing an action, and after judgment of foreclosure seek to intervene, thus postponing indefinitely the termination to the foreclosure action."

Plaintiff states on appeal it is willing to permit appellants to redeem for the full amount due and owing on their judgment of foreclosure (less the amount realized from the sale of Parcel II) plus interest, costs and attorney's fees, but that appellants have rejected this proposal. In addition, appellants have not stated any reason why they would be precluded from pursuing a separate suit based on the alleged misrepresentation of Melnicks and Auto Acceptance & Loan Corporation.

---

[4] *See also: Capitol Indemnity Corp. v. Morris* (1970), 46 Wis. 2d 527, 175 N. W. 2d 479.

Finally, appellants contend that if they are not allowed into this action it will be a denial of due process, but do not cite any cases in support of that proposition. However, the question was answered by the Nebraska Supreme Court in *Munger v. Beard, supra,* page 771.

". . . . One who would deny the power of the legislature to declare a judgment entered against parties holding the record title to real estate paramount to the rights of a party who acquired an interest in the property prior to the commencement of the action, but who failed to record his conveyance or incumbrance, would have to deny the rights of the legislature to say that a subsequent *bona fide* purchaser can take title as against a prior unrecorded conveyance. Such a party would have to argue that our recording acts are unconstitutional as taking from a man his property without due process of law. We might go further than this, and assert that it is the undoubted privilege of the legislature to say that no deed or instrument affecting real estate shall be of any validity or force whatever until it is recorded, and when possessed of this power, its right to ordain that an unrecorded conveyance or interest in real property shall not be asserted against a judgment or decree of court affecting the property, where all known owners thereof are made parties to the suit, cannot be questioned or disputed. This being the case, it might have provided in the amendment to section 85 that a judgment against the owner or record owner of real estate should bind those holding unrecorded interests therein and have dispensed altogether with the filing of a *lis pendens* notice by the plaintiff; and we cannot see how the provision for a notice, which the legislature might have dispensed with altogether, can be used as an argument to make the amendment unconstitutional. . . ."

In this case, we find no abuse of discretion by the trial court and that the trial court properly denied the motion of appellants, and the order is affirmed.

*By the Court.*—Order affirmed.