The SEWERAGE COMMISSION OF The CITY OF MILWAUKEE, Plaintiff-Respondent,

v.

State of WISCONSIN DEPARTMENT OF NATURAL RESOURCES, Defendant-Respondent,

WISCONSIN'S ENVIRONMENTAL DECADE, INC., Appellant.†

Court of Appeals

*No. 81–694. Submitted on briefs June 23, 1981.—Decided September 15, 1981.*
(Also reported in 311 N.W.2d 677.)

† Petition to review denied.

For the appellant the cause was submitted on the briefs of *Kathleen M. Falk* of Madison.

For the defendant-respondent Wisconsin Department of Natural Resources, the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Carl A. Sinderbrand,* assistant attorney general.

For the plaintiff-respondent Sewerage Commission of the City of Milwaukee, the cause was submitted on the brief of *Michael J. McCabe* and *James H. Petersen* of Milwaukee.

Before Gartzke, P.J., Bablitch, J. and Dykman, J.

GARTZKE, P.J. Wisconsin's Environmental Decade appeals from an order denying Decade leave to intervene. Because the circuit court did not abuse its discretion, and because no federal or state statute requires citizen participation in state actions to enforce water pollution control laws, we affirm.

The Sewerage Commission of the City of Milwaukee, later joined by the Metropolitan Sewerage Commission of the County of Milwaukee, brought this action against the DNR in July 1976.[1] The city commission sought a declaration invalidating a DNR regulation and requirements in two DNR permits issued to the commission in December 1974 pursuant to that regulation. The requirements pertain to the dates by which the city commission's South Shore plant and Jones Island plant must comply with effluent limits and water treatment standards. The DNR counterclaimed for forfeitures for violations of the permits and for injunctive relief.[2]

May 25, 1977 the circuit court entered a judgment adopting a lengthy stipulation by the parties. The stipulation affected a part of the counterclaim. It provided for a program of pollution abatement projects and set deadlines for completion of those projects. Part of the stipulation dealt with correction of wet weather bypassing and overflowing in separate sewer areas and required the commissions to coordinate a districtwide sewer system evaluation. Paragraph (B) (4) provides:

The Sewer System Evaluation Survey Report for each participating municipality shall be submitted to the Department by not later than July 1, 1980; at a minimum, it

---

[1] *See Sewerage Commission of Milwaukee v. DNR*, 102 Wis. 2d 613, 307 N.W.2d 189 (1981), for a more complete history of this case.

[2] The supreme court subsequently held in *Sewerage Commission*, note 1 *supra*, that the action for declaratory relief was not timely brought and directed the circuit court to dismiss the complaint but not the counterclaim.

shall identify a time schedule which assures that all designated corrective work in each participating municipality is completed by not later than July 1, 1986.

In April 1980 the commissions moved to amend Paragraph (B) (4) of the stipulation and therefore the judgment. That paragraph, as the commissions proposed to amend it, would establish dates in 1981 by which certain plans would be submitted and adopted. The proposed amendment would not affect the requirement that all corrective work be completed no later than July 1, 1986. No other change or modification to the stipulation was proposed.

July 28, 1980 the Decade moved for the first time since this action was commenced for leave to intervene in the action.[3] Attached to the motion is the affidavit of a Decade officer who states that he uses Lake Michigan for swimming and enjoyment, that in his opinion the May 1977 stipulation was inadequate to protect his rights in the waters of the state and further weakening of the stipulation will make worse an already inadequate situation and will injure his rights in those waters, and that his interest in the waters of the state is not adequately represented by the existing parties. The Decade submitted correspondence with the Attorney General regarding Decade's attempts to obtain information as to proposed changes in the stipulation. The circuit court denied Decade's motion and Decade brought this appeal.

1. *Timeliness*

The circuit court held that Decade's motion was untimely, with no discussion except to note that the motion was filed three years after the judgment was entered.

Section 803.09, Stats., provides in relevant part:

(1) Upon *timely* motion anyone shall be permitted to intervene in an action when the movant claims an inter-

---

[3] An officer of Decade unsuccessfully sought personally to intervene in 1977. The Decade did not.

est relating to the property or transaction which is the subject of the action and the movant is so situated that the disposition of the action may as a practical matter impair or impede the movant's ability to protect that interest, unless the movant's interest is adequately represented by existing parties.

(2) Upon *timely* motion anyone may be permitted to intervene in an action when a movant's claim or defense and the main action have a question of law or fact in common. . . . In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties. (Emphasis added.)

Thus, whether intervention is a matter of right or only permissive, the application to intervene must be "timely." No statutory definition exists of "timely."

We conclude that timeliness is determined by the circuit court from all the circumstances in its discretion. The burden is on the movant to show circumstances justifying intervention at a late stage of the litigation.

No Wisconsin case allowing intervention after judgment under sec. 803.09, Stats., or its predecessor has been cited to us. *Hoppmann v. Reid,* 86 Wis. 2d 531, 273 N.W. 2d 298 (1979), and *Mercantile Contract Purchase Corp. v. Melnick,* 47 Wis. 2d 580, 177 N.W.2d 858 (1970), held it was not an abuse of discretion under sec. 260.205, Stats. 1973, to deny intervention after judgment. In both cases the supreme court found it significant that the proposed intervenors knew about the action affecting their interests, but failed to act until after judgment. *Hoppmann,* 86 Wis. 2d at 535–36, 273 N.W.2d at 300–01; *Mercantile Contract Purchase Corp.,* 47 Wis. 2d at 591, 177 N.W.2d at 863.

Rule 24 of the Federal Rules of Civil Procedure resembles sec. 803.09, Stats., and does not define timeliness. Under federal case law timeliness is to be determined from all the circumstances by the trial court in the exer-

cise of its sound discretion. *NAACP v. New York,* 413 U.S. 345, 366 (1973) ; *Federal Dep. Ins. Corp. v. Hanrahan,* 612 F.2d 1051, 1053 (7th Cir. 1980).

The federal courts take into account various factors in making a determination of timeliness. *Nevilles v. Equal Employment Opportunity Com'n,* 511 F.2d 303, 305 (8th Cir 1975) (how far proceedings have gone, prejudice which delay might cause to other parties, and reasons for delay). *Accord, Alaniz v. Tillie Lewis Foods,* 572 F.2d 657, 659 (9th Cir.), *cert. denied,* 439 U.S. 837 (1978) ; *Commonwealth of Pa. v. Rizzo,* 530 F.2d 501, 506 (3d Cir.), *cert. denied,* 426 U.S. 921 (1976). *Stallworth v. Monsanto Co.,* 558 F.2d 257, 264–65 (5th Cir. 1977) (how long intervenor knew or should have known of an interest in the case, or that its interests were no longer protected by an existing party, before it sought intervention; prejudice to other parties from failure promptly to request intervention; prejudice to intervenor if intervention is denied; and unusual circumstances). *Accord, Culbreath v. Dukakis,* 630 F.2d 15 (1st Cir 1980). *United States v. American Tel. and Tel. Co.,* 642 F.2d 1285, 1295 (D.C. Cir. 1980) (time since suit was begun, why intervention is sought, need for intervention to preserve the applicant's rights, and probability of prejudice to existing parties).

Entry of judgment does not automatically make a petition to intervene untimely in the federal courts. *Stallworth,* 558 F.2d at 266. But post-judgment petitions have generally been looked upon with "a jaundiced eye." *McDonald v. E.J. Lavino Company,* 430 F.2d 1065, 1071–72 (5th Cir. 1970). They are unusual and not often granted. 3B *Moore's Federal Practice* par. 24.13(1) at 24–526 (1980). Such petitions tend to prejudice the existing parties or interfere with the orderly process of the court. *United States v. United States Steel Corp.,* 548 F.2d 1232, 1235 (5th Cir. 1977) ; *McDonald,* 430 F.2d at 1072. These

factors are not necessarily present where the proposed intervenor after judgment is concerned only with the remedial aspects of the case. *Hodgson v. United Mine Workers of America,* 473 F.2d 118, 129 (D.C. Cir. 1972), and cases cited. In some courts' view the most important consideration is whether an existing party will be harmed by the would-be intervenor's failure to seek intervention sooner. *McDonald,* 430 F.2d at 1073, and cases cited.

We agree with those courts which require the post-judgment applicant to show sufficient reason for having waited. *Nevilles,* 511 F.2d at 305. "The general rule is that motions for intervention made *after* entry of final judgment will be granted only upon a strong showing of entitlement and of justification for failure to request intervention sooner." *United States v. Associated Milk Producers, Inc.,* 534 F.2d 113, 116 (8th Cir.) (emphasis in original), *cert. denied,* 429 U.S. 940 (1976). Moore states that post-judgment intervention may be allowed where it is the only way to protect the movant's rights. 3B *Moore's Federal Practice* para. 24.13 (1) at 24–527 (1980).

The apparent reasons for the circuit court's denial of Decade's petition to intervene were the late stage of the proceeding and the long period of Decade's inaction. These reasons are sufficient to deny a post-judgment petition for intervention. *Hoppmann, supra; Mercantile Contract Purchase Corp., supra.*

The circuit court did not discuss the other factors considered by the federal courts for the very good reason that the record is silent as to those factors. Decade cannot complain if the circuit court, when exercising its discretion, failed to consider factors on which Decade presented no evidence.

As the party seeking to intervene at a late stage in the proceeding, the burden is on Decade to show entitlement

and justification. *Associated Milk Producers,* 534 F.2d at 116. That burden is increased by the supreme court's recognition that "the timely resolution of both factual and legal disputes is very important to the progress against environmental pollution which is envisaged by ch. 147." *Sewerage Commission of Milwaukee v. DNR,* 102 Wis. 2d 613, 631, 307 N.W.2d 189, 198 (1981). Decade has not met that burden.

The affidavit supporting Decade's motion does not set forth facts justifying its intervention. Decade's unexplained dissatisfaction with the judgment as entered hardly justifies its past failure to seek intervention. The record contains no basis for Decade's assertion that representation of its interests by the DNR is inadequate. Ordinarily a party's representation is deemed adequate to protect the proposed intervenor's interest if there is no showing of collusion between the representative and the opposing party; if the representative does not represent an interest adverse to that of the movant; and if the representative does not fail in the fulfillment of its duty. *United States v. Board of Sch. Com'rs, Indianapolis, Ind.,* 466 F.2d 573, 575 (7th Cir. 1972), *cert. denied,* 410 U.S. 909 (1973).

Collusion between the DNR and the plaintiff commissions has not been shown or even alleged. Decade does not claim that its interests and those of the DNR in protecting the quality of water have diverged since the judgment was entered. Decade has asserted no interest different from that of all citizens in having clean water. Decade has not shown that the DNR has failed to perform its statutory duties.

Furthermore, Decade has offered no explanation why it believes intervention is necessary at this juncture, when all that the commissions have proposed is a change in the filing dates for some reports. No explanation has been offered as to why Decade sees this as a critical move or change in the stipulation.

We conclude that the circuit court did not abuse its discretion when it held that Decade's petition to intervene was not timely.

A second chance for Decade to justify intervention would be inappropriate. It would add another layer and probably more delay to this suit. It would be inconsistent with the importance of the "timely resolution" of factual and legal disputes in environmental litigation. *Sewerage Commission,* 102 Wis. 2d at 631, 307 N.W.2d at 198.

Accordingly, we will not order a further hearing on Decade's motion to intervene.

2. *Mandatory Intervention*

The circuit court found that no right to intervene in a state enforcement action is conferred by the Federal Water Pollution Control Act (FWPCA), 33 U.S.C. secs. 1251 *et seq.* Section 1365(b)(1)(B) of the federal law confers on citizens the right to intervene in enforcement actions brought under the FWPCA in federal court, but is silent as to intervention in state court actions.[4] Section 147.01(2), Stats., authorizes the DNR to establish a pollutant discharge elimination system to effectuate this state's policy to abate pollution "consistent with all the requirements of" FWPCA, but contains no provision comparable to that in the FWPCA for citizen participation in state enforcement actions.

*Citizens for a Better Environ. v. Environmental Protection Agency,* 596 F.2d 720, 723 (7th Cir. 1979), held that Congress intended by the FWPCA that "EPA guidelines

---

[4] The federal statute, 33 U.S.C. sec. 1365(b)(1)(B), states:

(b) No action may be commenced—

(1) under subsection (a)(1) of this section—

. . . .

(B) if the Administrator or State has commenced and is diligently prosecuting a civil or criminal action in a court of the United States, or a State to require compliance with the standard, limitation, or order, but in any such action in a court of the United States any citizen may intervene as a matter of right.

would address, and state programs following those guidelines would provide for, citizen participation in . . . enforcement" actions. Appellant contends that new federal regulations at 40 C.F.R. sec. 123.9(d) (1980), promulgated after the *Citizens* decision, require a state plan for citizen participation in the enforcement process.

The EPA regulations require the states to adopt a plan that will satisfy one of two alternatives so as to provide for public participation in the state enforcement process.[5] It is not clear whether the federal regulations require post-judgment public participation in the state enforcement process. The circuit court found that Wisconsin authorities are in the process of determining how best to satisfy the federal regulations, and appellant does not challenge that finding. The circuit court cannot enforce a state regulation which has not yet been adopted.

Decade asserts that the new federal regulations must be enforced against the state because the state already has a mechanism for citizen participation in the enforcement process by virtue of its intervention statute, sec. 803.09, Stats. Section 803.09 does not address alterna-

---

[5] The EPA regulations, 40 C.F.R. sec. 123.9(d) (1980), direct that:

(d) Any State administering a program shall provide for public participation in the State enforcement process by providing either:

(1) Authority which allows intervention as of right in any civil or administrative action to obtain remedies specified in paragraphs (a)(1), (2) or (3) of this section by any citizen having an interest which is or may be adversely affected; or

(2) Assurance that the State agency or enforcement authority will:

(i) Investigate and provide written responses to all citizen complaints submitted pursuant to the procedures specified in § 123.8(b)(4);

(ii) Not oppose intervention by any citizen when permissive intervention may be authorized by statute, rule, or regulation; and

(iii) Publish notice of and provide at least 30 days for public comment on any proposed settlement of a State enforcement action.

tives for citizen participation under the FWPCA or adopt either of the alternatives set out in the new federal regulations. (*See* n. 5.) And Decade cannot intervene under sec. 803.09 because it failed to meet the timeliness requirement.

We conclude that the circuit court correctly held that neither federal nor state law requires the granting of Decade's motion to intervene.

*By the Court.*—Order affirmed.

BABLITCH, J. (Concurring in part, dissenting in part.) I agree with the trial court's thoughtful opinion concluding that neither ch. 147, Stats., nor the Federal Water Pollution Control Act provides citizens with an absolute right of intervention in this kind of case. I would reverse and remand, however, for the trial court's further consideration of the timeliness of the appellant's motion to intervene under the mandatory provisions of sec. 803.09(1), Stats., because its analysis of the factors relevant to a determination under that section is incomplete.

I disagree with the majority's statement (majority opinion, p. 188) that the record is silent as to the factors the trial court is required to consider in making its discretionary determination whether a motion to intervene is timely. Among the most important of those factors is the purpose of the attempted intervention. *Natural Resources Defense Council v. Costle,* 561 F.2d 904, 907 (D.C. Cir. 1977); *Hodgson v. United Mine Workers of America,* 473 F.2d 118, 129 (D.C. Cir. 1972). It is apparent from the record before us, and it is the express position of the Decade on this appeal, that its purpose in seeking intervention is to participate in the parties' ongoing negotiations to change the terms of the stipulated judgment, and not to relitigate issues previously deter-

mined in this action. It is seeking, in effect, to implement the judgment rather than to defeat it.[1]

I also disagree with the majority's assertion (majority opinion, p. 189) that the Decade has offered "no explanation" why it seeks intervention at this time. Its reason for doing so is its fear that the parties will negotiate all meaning out of the pollution-abatement timetable set forth in the stipulated judgment, resulting in additional pollution of Lake Michigan. This explanation is articulated in its motion to intervene[2] and in its briefs on appeal. The basis for its fear is readily apparent from the record before us.

Attached to the motion to intervene is a series of correspondence between counsel for the Decade and counsel for the DNR commencing in June 1979, more than a year before the motion to intervene was made. This correspondence is expressly incorporated by reference into the Decade counsel's affidavit in support of the motion. It reveals repeated and largely unsuccessful attempts by

---

[1] The motion to intervene asserts on behalf of the Decade's members "an interest in protecting and preserving the water resources of the state . . . which are affected by the actions of the parties in this case, and in particular, by any proposed modifications to the previously court-approved stipulation entered into in this case in May 1977." Although an affidavit and correspondence attached to the motion to intervene express the Decade's dissatisfaction with the judgment itself, the record reflects that the focus of its concerns during the year preceding the motion to intervene was on the efforts of the commissions to modify the stipulated judgment (Record at 12, pages 4 and 6) and on "any current negotiations, or determinations not [to] commence enforcement action by the DNR, [which] could make even worse an already inadequate situation." (Record at 12, page 10.)

Were the Decade to attempt to reopen the judgment after intervention, it would presumably be required to meet the tests for relief from judgment set forth in sec. 806.07, Stats., which specifies that the motion must be made "within a reasonable time," among other requirements.

[2] See note 1 supra.

the Decade, which had been informed that the parties were negotiating amendments to the judgment, to discover the terms of the proposed changes so that it could determine whether to attempt to intervene. The Decade's letters express its concern in clear terms that any changes in the stipulated judgment could adversely affect its members' interests.[3]

The correspondence also contains a letter dated January 4, 1980, from counsel for the DNR to counsel for the commissions acknowledging that extensions of several deadlines set forth in the judgment had been discussed by the parties,[4] and expressing a desire to consider them "as one package" because they were interrelated. The letter indicates that the DNR would not agree to join the commissions in petitioning the court for an eighteen month extension of the July 1, 1980, deadline for filing the initial reports because it feared a possible "domino

---

[3] In the first letter of record, dated June 22, 1979, the Decade indicated its awareness that the parties were negotiating unspecified changes in the judgment and stated:

As you are also aware, the Decade has a significant interest in this case because of what is undisputably a grossly overloaded and inadequate sewage system in Milwaukee and which is causing substantial injury to the interests which the Decade represents. Consequently, the Decade may wish to "participate" in the latest phase of the enforcement proceeding . . . . Whether or not we wish to "intervene" in the matter . . . is a question which we can only answer after we have knowledge of what the propose[d] amendments to the stipulation state.

A subsequent letter dated July 25, 1979, expressed the Decade's distress at "the present negotiations which are apparently going on in the backrooms between the regulator and regulatee [which] have not been brought out in the public arena . . . ."

See also note 1 supra, quoting the Decade's letter of June 3, 1980.

[4] These included the deadline specified for the completion of relief sewers, and those relating to expansion sewers and to the achievement of applicable water quality standards by the Combined Sewer Overflow abatement project.

effect" on other deadlines. It assured the commissions, however, that it did not intend to seek court enforcement of the initial deadline at that time. The letter clearly contemplates that continued negotiations concerning extension of other deadlines in the implementation of the pollution abatement program would follow.

The commissions' initial motion to amend the judgment, filed on April 14, 1980, sought an eighteen month delay in the deadline to file the initial reports required by the judgment. On July 17, 1980, the commissions filed an amended motion to amend seeking still longer extensions of that deadline. No response by the DNR to either motion is of record.[5] The Decade's motion to intervene followed on July 28, 1980, only eleven days after the amended motion to amend. Neither the DNR nor the commissions contend that the delay between the motions to amend and the motion to intervene was excessive.

The trial court did not consider the Decade's yearlong efforts to obtain information regarding proposed changes to the stipulated judgment. It did not consider that the Decade moved promptly to intervene once the commissions sought formal approval of the first of the proposed extensions of time to perform their obligations under that judgment. It focused solely on the time elapsed between the entry of the stipulated judgment and the motion to intervene. That focus excludes, as does the majority opinion, consideration of the fact that the motion was prompted by the commissions' efforts to evade a significant term of the judgment, with the apparent blessing of the DNR, and that more such efforts were under negotiation.

---

[5] A letter from counsel for the DNR to counsel for the Decade dated June 24, 1980, states that the DNR "notified the court" on April 29, 1980, that it opposed the initial motion to amend. No such notification appears of record, however, and no proceedings on either motion at which any such opposition could be expressed were ever held.

In *Natural Resources Defense Council, supra,* the federal court of appeals found that the federal district court had abused its discretion in denying motions to intervene filed some three years after commencement of an environmental protection action, and after a settlement agreement had been filed, and held that the motions should have been granted. It stated:

Whether a motion to intervene is timely "is to be determined from all the circumstances." More particularly, this court has noted:
[T]he amount of time which has elapsed since the litigation began is not in itself the determinative test of timeliness. Rather, the court should also look to the related circumstances, including the purpose for which intervention is sought . . . and the probability of prejudice to those already in the case. *Hodgson v. United Mine Workers of America,* [473 F.2d 118, 129 (D.C. Cir. 1972)].
Judged by these standards, it is clear that the District Court abused the "sound discretion" it is accorded to assess timeliness. In relying upon the age of the case and its closeness to settlement, the Court failed to take into account "the purpose for which intervention [was] sought," namely, *the concern for participation in the implementation of the agreement.* [Footnote omitted; emphasis in original.]

561 F.2d at 907. The fact that judgment has been entered in this case does not diminish the force of the federal court's reasoning. In this case, as in *Natural Resources Defense Council* and *Hodgson,* the intervenor does "not seek to reopen the settled issues in the case but [seeks] to participate in an upcoming, remedial phase of the litigation." *Natural Resources Defense Council,* 561 F.2d at 908.

The commissions' motions to amend had the effect of initiating new litigation between the parties. No proceedings on this litigation had even been scheduled at the time the Decade moved to intervene.

The trial court granted the Decade *amicus curiae* status with respect to all future proceedings, and directed the parties to keep the Decade apprised of all future negotiations towards a settlement. In doing so, the court evinced its recognition of the importance of citizen involvement in litigation affecting the environment. *Cf. Wisconsin's Environmental Decade, Inc. v. PSC,* 69 Wis. 2d 1, 230 N.W.2d 243 (1975), (holding that this same public interest group had standing to assert the interest of its members in a clean environment under the Wisconsin Environmental Protection Act). Also implicit in this ruling is the trial court's assessment of the "possible benefit to the court" to be derived from the Decade's participation in the case—a factor considered by the courts in both *Natural Resources Defense Council,* 561 F.2d at 908, and *Hodgson,* 473 F.2d at 129—and the trial court's determination that the present parties would not be unduly prejudiced by that participation.

All of the above factors were appropriate and ripe for the trial court's consideration in determining whether the motion to intervene was timely under the mandatory provisions of sec. 803.09(1), Stats. I am puzzled at the majority's suggestion (majority opinion, p. 188) that the Decade should have introduced some type of additional "evidence" in support of these or other appropriate factors before the trial court was obliged to consider them. A resolution of the issue of timeliness in this case involves no factual determination. It involves an exercise of judgment in light of undisputed facts (filing dates, the stage of the proceedings) or of matters either ascertainable from the motion papers (purpose of intervention) or not readily susceptible to evidentiary proof (probable prejudice to existing parties[6]).

---

[6] The federal circuit courts are split on the question whether prejudice to existing parties is an appropriate factor for consideration in interventions as of right. The 5th circuit court of appeals

The trial court's omission to consider any factor other than the age of the underlying action was a failure to consider "factors relevant to a discretionary determination." *Joint School v. Wisconsin Rapids Ed. Asso.*, 70 Wis. 2d 292, 309, 234 N.W.2d 289, 299 (1975). That failure constitutes an abuse of discretion. *Wis. Asso. of Food Dealers v. City of Madison*, 97 Wis. 2d 426, 434, 293 N.W.2d 540, 545 (1980).

In *Wis. Asso. of Food Dealers*, this court was directed by the supreme court to reverse and remand discretionary rulings of a trial court whenever it appears that the trial court's analysis is incomplete because it has failed to consider factors appropriate to the exercise of discretion. *See also Hartung v. Hartung*, 102 Wis. 2d 58, 306 N.W.2d 16 (1981); *United States Fire Ins. Co. v. E.D. Wesley Co.*, 100 Wis. 2d 59, 301 N.W.2d 271 (Ct. App. 1980).

It is not within the proper province of this court to find facts and weigh factors which the trial court should, but did not, evaluate. The question before us is not whether the Decade should be allowed to intervene in this lawsuit. The question on review is limited to whether the trial court properly exercised is discretion in determining that the motion to intervene was not timely under the mandatory intervention statute. In my view the majority usurps the trial court's discretionary function by considering matters which it did not reach. These include such matters as whether the DNR can adequately represent the Decade's interests, and the majority's unexplained conclu-

takes the position that this factor should be a consideration only in permissive interventions under Fed R Civ P 24(b), which has its counterpart in sec. 803.09(2), Stats., and that it has no bearing in determinations under the mandatory provisions of Fed. R. Civ. P. 24(a), which is substantially identical to sec. 803.09(1). *Stallworth v. Monsanto Co.*, 558 F.2d 257, 265 (5th Cir. 1977). *But see Culbreath v. Dukakis*, 630 F.2d 15, 21–22 (1st Cir. 1980).

sion that the Decade's entry as a party would "add another layer and probably more delay to this suit." (Majority opinion, p. 190). The latter finding is curious in light of the Decade's purported purpose to avoid delay in implementing the judgment. In any event, such a finding is outside the realm of our review.

*Wis. Asso. of Food Dealers* gives this court no choice but to reverse and remand for the trial court's complete analysis of the issue of timeliness under sec. 803.09(1), Stats.