CAROLINA BUILDERS CORPORATION,
Plaintiff,

v.

Scott DIETZMAN a/k/a Scott A. Dietzman d/b/a New
Age Construction & Design, Amcore Bank, N.A.,
AnchorBank SSB, ABC Supply Co., Inc., City
Wide Insulation, RA Heating & Air, State of
Wisconsin and United States of America,
Defendants,

WATER WELLS, INC., Defendant-Respondent,

WISCONSIN DEPARTMENT OF WORKFORCE DEVELOPMENT
and Wisconsin Department of Revenue,
Interested Parties,

170 BRICKSON ROAD, LLC and Capitol Bank,
Intervening Defendants-Appellants.†

Court of Appeals

*No. 2006AP3180. Oral argument June 11, 2007.
—Decided July 12, 2007.*

2007 WI App 201

(Also reported in 739 N.W.2d 53.)

† Petition to review denied 10/10/07.

777

On behalf of the intervenor-appellants, the cause was submitted on the briefs of *Penny G. Gentges* and *Arthur M. Moglowsky* of *Bass & Moglowsky, S.C.*, Milwaukee. There was oral argument by *Arthur M. Moglowsky*.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Francis J. Eustice* and *Rebecca R. DeMarb* of *Eustice, Laffey, Sebranek & Auby, S.C.*, Sun Prairie. There was oral argument by *Francis J. Eustice*.

Before Dykman, Vergeront and Bridge, JJ.

¶ 1. VERGERONT, J. This appeal concerns the rights of a construction lienholder in relation to the purchaser of the property from the mortgagee, the superior lienholder. The issues arise because of the timing and circumstances of two separate actions that affect the property—this construction lien foreclosure action in which construction lienholder Water Wells, Inc., is a defendant and a subsequent action to foreclose the mortgage in which Water Wells was not made a party. A judgment of foreclosure and order for a sheriff's sale was entered in this action first, but no sale had occurred when the property was sold in the mortgagee's foreclosure action. Upon Water Wells' motions in this action, the court concluded that Water Wells still had a valid lien and ordered another sale of the property. The purchaser and present owner, Brickson Road, LLC, and its lender, Capitol Bank, appeal.

¶ 2. We agree with the circuit court that Water Wells' lien remains valid. Like the circuit court, we conclude: Water Wells did not need to file its own lis pendens in this action because the plaintiff construction lienholder did so; Water Wells had a valid lien at the time of the sale in the mortgage foreclosure action; and its lien was not extinguished in that action because it was not a party to it. However, we also conclude the remedy for Water Wells at this point in time is not another sale of the property. Instead, following the analysis in *Buchner v. Gether Trust*, 241 Wis. 148, 5 N.W.2d 806 (1942), Water Wells should have the opportunity to purchase the property at a price and within a time period to be established by the circuit court; and if it does not do so, its lien will be extinguished. We therefore affirm in part, reverse in part, and remand for further proceedings.

## BACKGROUND

¶ 3. This action began in January 2003 when Carolina Builders Corporation filed a complaint in Dane County Circuit Court seeking to foreclose its construction lien against property located in Dane County and owned by Scott Dietzman. Carolina Builders named as defendants a number of entities that allegedly had an interest in or lien against the property, one of which was Water Wells. In the complaint, Carolina Builders sought a determination of the amount it was owed, a foreclosure and sale of the property in order to satisfy its lien, and a determination of the interest or liens of the defendants.

¶ 4. Water Wells answered the complaint and filed a cross-claim alleging that it had properly filed a claim for a construction lien against the property, it was owed $8,268.87 plus interest and attorney fees by Dietzman,

and it was entitled to a judgment of foreclosure and sale with a deficiency judgment if the proceeds were insufficient.[1] Shortly thereafter Carolina Builders recorded with the Dane County Register of Deeds a lis pendens giving notice of the filing of the action.

¶ 5. Carolina Builders moved for a default judgment because Dietzman failed to answer. The court entered a judgment in March 2004 ordering a sheriff's sale of the property any time after June 15, 2004; the judgment directed that the sale proceeds be deposited with the clerk until the court entered an order on their disposition, with the court to decide any issues regarding the priority of liens attaching to the proceeds. The judgment did, however, find that defendant Anchor-Bank SSB had a recorded mortgage from Dietzman, which was "a first and paramount lien" on the property.

¶ 6. On June 21, 2004, AnchorBank filed an action to foreclose its mortgage of $288,059.81 in Dane County Circuit Court. It named as defendants other lienholders in this action, but not Water Wells, Inc. The AnchorBank action was assigned to a different judge, who entered a judgment for foreclosure in favor of AnchorBank and against Dietzman and the other defendants and a sale of the property. In May 2005, an order was entered in the AnchorBank action confirming the sale of the property to 170 Brickson Road, LLC (Brickson) for $272,100. Brickson thereafter obtained a loan from Capitol Bank secured by a purchase money

---

[1] Although Water Wells titles this section of its pleading "Cross-claim and Counter-claim," it does not appear to seek any relief against Carolina Builders. *See* WIS. STAT. § 802.07(1) and (3) (2005–06) (a defendant counterclaims against a plaintiff; a pleading stating a claim against a co-party is a cross-claim). Therefore we refer only to a cross-claim.

All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted.

mortgage. Both the sheriff's deed conveying the property to Brickson and the mortgage were recorded with the Dane County Register of Deeds in June 2005.

¶ 7. In this action nothing took place from the court's March 2004 judgment until February 27, 2006, when Water Wells filed a notice of application for confirmation of a sheriff's sale of the property that took place on February 7, 2006. This notice stated that the sale was pursuant to the court's March 2004 judgment and that Water Wells, who bid $6,783.55, was the successful bidder at this sale.

¶ 8. Before the court acted on Water Wells' application for confirmation of the February 7, 2006 sale, Brickson and Capitol Bank moved to intervene in this action to oppose the confirmation and file a cross-claim asking the court to declare Water Wells' lien invalid as to them because they were bona fide purchasers for value. An accompanying affidavit averred that Water Wells was not joined in the AnchorBank action because its lien claim was filed on March 19, 2001, more than two years before the AnchorBank action was filed.[2] Water Wells did not oppose the intervention and filed its own motion asking the court to dismiss those parties whose interests were foreclosed in the AnchorBank action and determine its own interest with respect to the property —specifically, to determine either that it was entitled to confirmation of the February 7, 2006 sale under the court's March 2004 judgment or entitled to relief on its cross-claim.

---

[2] A lien claimant must file a claim for the lien in the office of the clerk of court of the county in which the affected land is located within six months of performing the last work or supplying the last materials, and an action to foreclose the lien must be commenced within two years of the date of filing the claim. WIS. STAT. § 779.06(1).

781

¶ 9. The court decided the issues raised in Water Wells' motion based on the parties' factual submissions, which, the court concluded, showed that the facts were undisputed. The court agreed with Water Wells that the entities who were parties in the AnchorBank action no longer had a claim of interest against the property and should be dismissed. The court rejected the arguments of Brickson and Capitol Bank that Water Wells could not initiate a sale pursuant to the March 2004 judgment and concluded that Water Wells did not need to file its own lis pendens since Carolina Builders had filed one. Because Water Wells' lien was not extinguished in the AnchorBank action, the court held, its lien was "ahead" of Brickson and Capitol Bank, and they held the property subject to that lien.[3]

¶ 10. The court scheduled a hearing on Water Wells' application for confirmation of the February 7, 2006 sale. Shortly before the hearing, Brickson and Capitol Bank tendered to Water Wells a check in the amount of $7,213.41 as satisfaction for its construction lien plus reimbursement for the costs of the sale. Brickson and Capitol Bank asked the court to order Water Wells to execute and deliver a satisfaction of the construction lien. The court denied this request because it determined there is no right of redemption in a construction lien foreclosure proceeding and, if there were, "the amount tendered was not in full satisfac-

---

[3] Water Wells also asked for a determination of the rights of City Wide Insulation, another construction lienholder named as a defendant in this action but not in the AnchorBank action, and the court made the same rulings regarding City Wide Insulation's lien as it did regarding Water Wells' lien. However, City Wide Insulation is not a party to this appeal. Therefore we do not address in this opinion the status of City Wide Insulation's lien or what remedy, if any, it may have.

tion . . . ." The court also denied Water Wells' application for confirmation of the sale because it concluded that the bid price of $6,783.55 for property that Brickson had purchased for $272,100 was "so inadequate as to shock the conscience of the court," and it ordered a resale of the property.

## DISCUSSION

¶ 11. On appeal, Brickson and Capitol Bank (appellants) challenge each of the court's rulings except its decision to deny confirmation of the February 2006 sale.[4] Their primary argument is that, because Water Wells did not file its own lis pendens at least twenty days before the March 2004 order, that judgment was invalid as to Water Wells[5] and its lien did not survive the judgment entered in the AnchorBank action. They

---

[4] Water Wells does not appeal the court's denial of its application for confirmation of the February 2006 sale.

[5] The appellants use the phrase "void as to Water Wells." Because we conclude Water Wells did not need to file a lis pendens, we need not discuss in great detail the result of a failure to file a required lis pendens. However, we substitute the term "invalid" for "void" because we do not want to suggest that the judgment would be void if Water Wells were required to file a lis pendens. As between parties to an action in which a required lis pendens has not been filed, the judgment is not void; because a lis pendens is not needed to give notice to other parties to the action, a failure to file as between parties "is a minor irregularity, not a fatal flaw to the validity of the judgment entered." *Hailey v. Zacharias*, 39 Wis. 2d 536, 539, 159 N.W.2d 667 (1968). As to a nonparty who purchased the property without knowledge of a pending action concerning the property in which the required lis pendens was not filed, we have said that the judgment was "of no legal effect as against [that purchaser's] title." *Waukesha State Bank v. Village of Wales*, 188 Wis. 2d 374, 386, 525 N.W.2d 110 (Ct. App. 1994).

also argue that Water Wells could not initiate a sale under the March 2004 judgment because only Carolina Builders, as plaintiff, could do so. In the alternative, they argue, even if Water Wells still has a valid lien, it is not entitled to a sale with its lien paramount; at most it is entitled to the right to purchase the property, as in *Buchner*, 241 Wis. 148.

¶ 12. We conclude that Water Wells did not need to file its own lis pendens because Carolina Builders filed a proper and timely lis pendens. Water Wells had a valid lien at the time of the AnchorBank action and, because it was not a party to that action, its lien was not foreclosed in that action. We agree with Water Wells that it could initiate a sale under the March 2004 judgment when Carolina Builders did not. However, we agree with appellants that *Buchner* provides the proper analysis for the remedy to which Water Wells is entitled at this point in time.

¶ 13. A resolution of the issues presented on this appeal requires that we construe and apply statutes and analyze case law, all of which involve questions of law, which we review de novo. *Gaugert v. Duve*, 2001 WI 83, ¶ 15, 244 Wis. 2d 691, 628 N.W.2d 861.

¶ 14. When we construe statutes, we begin with the language of the statute and give it its common, ordinary, and accepted meaning, except that technical or specially defined words are given their technical or special definitions. *State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. We interpret statutory language in the context in which it is used, not in isolation but as part of a whole, in relation to the language of surrounding or closely related statutes, and we interpret it reasonably to avoid absurd or unreasonable results. *Id.*, ¶ 46. We

784

also consider the scope, context, and purpose of the statute insofar as they are ascertainable from the text and structure of the statute itself. *Id.*, ¶ 48.

## I. Lis Pendens

¶ 15. We first address the contention that the March 2004 judgment is invalid as to Water Wells because Water Wells did not file its own lis pendens before that judgment was entered.[6] A resolution of this issue requires interpretation of the lis pendens statute, WIS. STAT. § 840.10, and the construction lien statute, WIS. STAT. ch. 779, subch.1.

¶ 16. WISCONSIN STAT. § 840.10(1)(a) states when a lis pendens must be recorded[7] and the effect of that recording:

> **(1)(a)** In an action where relief is demanded affecting described real property which relief might confirm or change interests in the real property, after the filing of the complaint the plaintiff shall present for filing or recording in the office of the register of deeds of each county where any part thereof is situated, a lis pendens containing the names of the parties, the object of the action and a description of the land in that county affected thereby. In any action if the defendant asks relief on a counterclaim or cross-complaint, which contains a legal description of the real estate and seeks

[6] There is no dispute that Water Wells did not file a lis pendens before the March 2004 judgment was entered. Water Wells did record a lis pendens on April 28, 2006. However, it does not contend that this lis pendens is relevant to the March 2004 judgment. Therefore we do not address it.

[7] We recognize the statute says "filing or recording." For purposes of this appeal it is not necessary to distinguish between these two terms and therefore we use the term "record."

such relief, after the filing of the counterclaim or cross-complaint the defendant shall present for filing or recording a lis pendens. From the time of filing or recording every purchaser or encumbrancer whose conveyance or encumbrance is not recorded or filed shall be deemed a subsequent purchaser or encumbrancer and shall be bound by the proceedings in the action to the same extent and in the same manner as if the purchaser or encumbrancer were a party thereto. . . . Judgment shall not be entered in favor of the party required to present for filing or recording a lis pendens until 20 days after the lis pendens has been filed or recorded.

¶ 17. Before analyzing the language of this statute as applied to Water Wells, we provide some necessary background on actions to foreclose construction liens.

¶ 18. WISCONSIN STAT. § 779.09 provides in pertinent part:

. . . All persons having filed claims for liens under s. 779.01 may join as plaintiffs, and if any do not join they may be made defendants. All persons having liens subsequent to such lien may be joined as defendants. If any person who is a proper party is not a party to the action the person may, at any time before judgment, be made a defendant, and any person who after the commencement of the action obtains a lien or becomes a purchaser may, at any time before judgment, be made a defendant.

¶ 19. The "judgment shall adjudge the amount due to each claimant who is a party to the action" and shall direct that the interest of the owner be sold to satisfy the judgment. WIS. STAT. § 779.10. The proceeds of the sale must be distributed in this way: "[t]he several claimants whose liens were established in the action shall be paid without priority among them-

selves," and if the sum is insufficient to pay the liens in full, "they shall be paid proportionately." WIS. STAT. § 779.11.

¶ 20

> It is the clear intent and purpose of the [construction lien] statute that one action should be begun; that all persons having liens upon the property should become either parties plaintiff or defendant thereto; that the rights of all parties should be adjudicated; and that all persons having a claim for work and labor done or materials furnished should be equally entitled, in proportion to the amount of their respective claims, to the proceeds of the sale.

*Erickson v. Patterson*, 191 Wis. 628, 630–31, 211 N.W. 775 (1927). It is for this reason that, if one construction lien claimant has brought the action within the statute of limitations, "all lien claimants, being by statute necessary parties thereto either as plaintiffs or defendants, are brought within the statute and their rights saved." *Id.* at 632. For the same reason, a defendant lien claimant is entitled to a determination of the amount due and its share of the proceeds of the sale without filing a cross-claim asking for that relief.[8] *Rohn v. Cook*, 165 Wis. 299, 306, 162 N.W. 183 (1917); *Dusick v. Green*, 118 Wis. 240, 249, 95 N.W. 144 (1903).

¶ 21. Returning to WIS. STAT. § 840.10(1)(a), we see that the plain language imposes the requirement of recording a lis pendens on the "plaintiff" who files a

---

[8] If any lien claimant wants a personal deficiency judgment, the claimant must request one in its pleading. WIS. STAT. § 779.12(2); *Dusick v. Green*, 118 Wis. 240, 249, 95 N.W. 144 (1903).

complaint in which "relief is demanded affecting described real property which relief might confirm or change interests in the real property" and on a defendant "seek[ing] such relief" on "a counterclaim or a cross-complaint, which contains a legal description of the real estate." A defendant construction lien claimant is obviously not a plaintiff, and, contrary to the appellants' assertion, no cross-claim is necessary in order for a defendant construction lien claimant to obtain a determination of the amount due it and an order for sale. *See Rohn*, 165 Wis. at 306; *Dusick*, 118 Wis. at 249; *see also* WIS. STAT. §§ 799.09–11.

¶ 22. The appellants may intend to argue that, even if Water Wells did not need to file a cross-claim to obtain an adjudication of its lien amount and a sheriff's sale, because Water Wells *did* file a cross-claim that included that relief,[9] it is obligated to record a lis pendens. We reject this argument. We see no logical rationale for imposing the requirements of WIS. STAT. § 840.10(1)(a) on a defendant construction lien claimant simply because it unnecessarily files a cross-claim seeking relief it is entitled to under WIS. STAT. §§ 779.09–11.[10]

---

[9] Water Wells explained at oral argument that it included this relief in a cross-claim just to be safe.

[10] Water Wells *was* required to file a cross-claim in order to obtain a personal deficiency judgment against Dietzman. *Dusick*, 118 Wis. at 249; WIS. STAT. § 799.12(2). Water Wells' cross-claim included a request for a deficiency judgment against Dietzman, although it did not obtain a deficiency judgment against Dietzman. In any event, a personal deficiency judgment against Dietzman is not "relief [that] might confirm or change interests in the real property . . . ." WIS. STAT. § 840.10(1)(a).

¶ 23. We also conclude that the recording of one proper and timely lis pendens in a construction lien foreclosure action satisfies the purposes of WIS. STAT. § 840.10. The primary purpose of § 840.10 is the protection of the courts' and the litigants' interests in the finality of the judgment. *Belleville State Bank v. Steele*, 117 Wis. 2d 563, 574–75, 345 N.W.2d 405 (1984). This is accomplished by the statutory requirement that, from the time of the filing of the lis pendens, each purchaser or conveyancer whose interests are unrecorded is treated as a subsequent purchaser or conveyancer and is bound as if a party to the action.[11] *See id.* at 571–74. We see no reason that more than one lis pendens is required in this action to serve this purpose.

¶ 24. An additional objective of the statute is to give prospective purchasers and encumbrancers notice of pending actions that affect title to the property. *Id.* at 575. In this case, the lis pendens that Carolina Builders recorded states the name of the action as *Carolina Builders v. Scott Dietzman, et al.*; gives the case number and date of filing; describes the action as "upon the Complaint of the above Plaintiff against the above Defendants"; states that "the object of said action is to foreclose a Claim for Construction Lien of the Plaintiff against the Defendant, Scott Dietzman . . ."; and describes the real property affected. Based on this lis pendens, any prospective purchaser or encumbrancer

_____

[11] As to persons whose interests are recorded, the plaintiff is expected to know of their interests and make them parties. *See Mercantile Contract Purchase Corp. v. Melnick*, 47 Wis. 2d 580, 586, 177 N.W.2d 858 (1970) (citation omitted).

could readily locate the court file for this action and learn the details of the proceedings.

¶ 25. Appellants argue that it is unreasonable to expect prospective purchasers to consult the court file to learn all the parties to the action, and they cite *Waukesha State Bank v. Village of Wales*, 188 Wis. 2d 374, 525 N.W.2d 110 (Ct. App. 1994), in support of this argument. In that case the purported lienholder did not record a lis pendens in its action to enforce a forfeiture by means of a lien on the property and the mortgagee purchased the property at the mortgage foreclosure sale without knowing about that other action. *Id.* at 379. The court rejected the argument that the purchaser was obligated to search the records of the clerk of court, concluding that such a requirement would undermine Wis. Stat. § 840.10. *Id.* at 387. The reasoning in *Waukesha State Bank* is wholly inapplicable in this case, because here a lis pendens was recorded that would direct any interested person to the precise case file.

■

¶ 26. We conclude that Water Wells did not need to record its own lis pendens because a proper and timely one was recorded by Carolina Builders. Accordingly, there is no infirmity in the judgment adjudicating Water Wells' lien and ordering a sale, and its lien was not rendered invalid for failure to file a lis pendens.

II. Effect of Sale in the AnchorBank Action on Water Wells' Lien

¶ 27. Appellants argue that, when Brickson purchased the property at the sale in the AnchorBank action, Brickson acquired the property free of Water Wells' lien. This is so, they argue, because Brickson became the successor in interest to AnchorBank's supe-

rior lien rights and all junior liens were extinguished. In what we understand to be an alternative argument, appellants assert that, because Water Wells did not file a lis pendens in this action, Brickson was a good-faith purchaser for value and therefore acquired title free of Water Wells' lien.

¶ 28. Case law clearly establishes that a mortgage foreclosure action does not extinguish the lien of a lienholder that is not a party to the action. *Wisconsin Fin. Corp. v. Garlock*, 140 Wis. 2d 506, 513, 410 N.W.2d 649 (Ct. App. 1987); *First Wis. Trust Co. v. Rosen*, 143 Wis. 2d 468, 473, 422 N.W.2d 128 (Ct. App. 1988). "As a result, such nonparties retain their interest in the property . . . ." *Id.* This principle is expressed in the plain language of WIS. STAT. § 846.17, which provides that the sheriff's deed, given upon confirmation of a foreclosure sale, vests in the purchaser "all the right, title and interest of the mortgagor . . ." and is a "bar to all claim, right of equity of redemption therein, of and *against the parties to such action.*"[12] (Emphasis added.)

¶ 29. The appellants rely on the following language from *Rosen*, 143 Wis. 2d at 472: "[The purchaser at a sale under WIS. STAT. § 846.17] receives the interest of the mortgagor and whatever interest the other parties to the suit possessed at the commencement of the action." The appellants argue that this sentence supports their position that, because AnchorBank's lien was superior to Water Wells' lien, Brickson acquired title free of Water Wells' lien even though Water Wells was not a party. However, neither

---

[12] WISCONSIN STAT. ch. 846, which governs real estate foreclosures, controls "as far as applicable unless otherwise provided in [subchapter I of WIS. STAT. ch. 799]." WIS. STAT. § 779.09.

791

the quoted sentence nor any other statement in *Rosen* suggests that lienholders who are *not* parties lose their rights as a result of the sale. In fact, as noted above, the *Rosen* court expressly stated that "nonparties retain their interest in the property."[13] *Id.* at 473.

¶ 30. As we understand the appellants' good-faith purchaser argument, it is based on their contention that, although Water Wells' lien claim was of record, without a lis pendens filed by Water Wells in this action, Brickson did not have notice that there was an action to foreclose Water Wells' lien filed within the two-year statute of limitations. *See supra* at footnote 2. Because the appellants do not cite to any statute or case law to explain the foundation for this argument, we are uncertain whether they are relying on WIS. STAT. § 706.08(1)(a) or some doctrine having another source. Section 706.08(1)(a) provides that conveyances that are not recorded as provided by law are void as against a subsequent good-faith purchaser for value. However, "conveyance" does not include transactions in which an interest in land is affected by act or operation of law. WIS. STAT. § 706.01(4); WIS. STAT. § 706.001(1), (2)(a). It would appear that a construction lien is not a conveyance because its source is a statute.

¶ 31. However, even if we assume for purposes of argument that a "good faith purchaser" theory might be

---

[13] The appellants also attempt to distinguish *First Wis. Trust Co. v. Rosen*, 143 Wis. 2d 468, 422 N.W.2d 128 (Ct. App. 1988), on the ground that the issue there concerned the rights among various lienholders who were making claims on the surplus sale proceeds. However, the different factual context does not make the plainly-stated underlying principles inapplicable in this case.

applicable—under WIS. STAT. § 706.08 or some similar doctrine—we conclude Brickson was not a good faith purchaser. A purchaser in good faith is "one without notice, constructive or actual, of a prior conveyance." *Kordecki v. Rizzo*, 106 Wis. 2d 713, 719–20, 317 N.W.2d 479 (1982); *see also* WIS. STAT. § 706.09(1) and (2). A purchaser in good faith is "deemed to have examined the record and to have notice of the contents of all instruments in the chain of title and of the contents of instruments referred to in an instrument in the chain of title." *Kordecki*, 106 Wis. 2d at 719. In *Kordecki*, the court concluded that a purchaser had constructive notice that a land contract vendee did not have the power to sell the property when a recorded lis pendens, had he examined it, "would have led him to the . . . circuit court file on the proceedings to foreclose the land contract and more specifically to the documents terminating the period of redemption on [a particular date]." *Id.* at 720. These were reasonable steps for the purchaser to take. *See id.*

¶ 32. In this case, had Brickson examined the lis pendens, it would have been led to the circuit court file for the identified court proceeding and, more specifically, to the complaint identifying Water Wells as a lien claimant and the judgment that adjudicated its lien. We can see no significant difference between such an inquiry and the inquiry the court considered reasonable in *Kordecki*. Moreover, because the lis pendens in this case identified the action as one to foreclose a construction lien, and because all construction lien claimants must be joined in an action brought by one construction lien claimant, *see Erickson*, 191 Wis. at 631, 632, it is reasonable to expect that a prospective purchaser, upon seeing this lis pendens, would understand that there may be other construction lien claimants who are parties to the action.

793

¶ 33. To the extent the appellants are arguing that Brickson was a good faith purchaser because Water Wells was required by WIS. STAT. § 840.10(1)(a) to file its own lis pendens, we have already concluded Water Wells was not required to do so.

¶ 34. In summary, none of the theories that appellants advance succeed in altering the fundamental point that, because Water Wells was not a party to the AnchorBank action, its lien was not extinguished by the sale to Brickson. Accordingly, Water Wells still has a valid lien on the property.

III. Remedy

¶ 35. Because Water Wells has a valid lien that was not extinguished in the AnchorBank action, the question becomes: what remedy is Water Wells entitled to? The appellants contend that the circuit court erred in ordering another sale because only Carolina Builders, as the plaintiff in this action, may initiate a sale under the March 2004 judgment. We reject this argument for reasons similar to those we explained in ruling that Water Wells did not need to file its own lis pendens. However, we agree with the appellants that the remedy ordered in *Buchner*, rather than the sale ordered by the circuit court, is the proper remedy at this point in time.

¶ 36. Considering first the appellants' argument that only Carolina Builders may initiate a sale under the March 2004 judgment, we conclude this is not required by the judgment or by statute and it is inconsistent with the statutory scheme for construction

794

lien foreclosure actions. First, the judgment does not state who is to initiate the sale, but states simply that the "Real Estate may be sold at public auction under the direction of the Sheriff of Dane County . . . ." Second, there is no provision in WIS. STAT. §§ 779.06–13 specifying who is to initiate the sale that is ordered by the court. *See* § 779.12(1) and WIS. STAT. §§ 815.31–64 (addressing the notice for and conduct of the sale). The provisions in WIS. STAT. ch. 846 on which the appellants rely do not address the topic.[14]

¶ 37. Third, giving Carolina Builders the exclusive right to initiate the sale ordered by the circuit court in its March 2004 judgment is inconsistent with the equal treatment accorded all construction lien claim-

---

[14] The provisions in WIS. STAT. ch. 846 on which the appellants rely are: WIS. STAT. § 846.01(1), which provides that "in actions for the foreclosure of mortgages upon real estate, if the plaintiff recover[s], the court shall render judgment of foreclosure and sale, as provided in this chapter, of the mortgaged premises . . . ."; WIS. STAT. § 846.02, which permits any defendant to receive an assignment of the mortgage upon payment of the specified sums to the plaintiff; and WIS. STAT. § 846.15, which permits a junior lienholder to pay to the plaintiff the amount of the judgment plus other sums before the sale and thereby be subrogated to the rights of the plaintiff "as to such judgment."

The appellants also rely on *Rohn v. Cook*, 165 Wis. 299, 162 N.W. 183 (1917), in support of their position. However, nothing in that case or *Dusick*, 118 Wis. 240, on which *Rohn* relies, supports a limitation on which construction lienholders, of those who are parties to the action, may initiate a sale. Indeed, the appellants' position is inconsistent with the reasoning in these cases—that all construction lien claimants in an action, whether plaintiff or defendant, are treated the same with respect to adjudicating their liens and distributing the sale proceeds. *Rohn*, 165 Wis. at 306; *Dusick*, 118 Wis. at 249.

ants in WIS. STAT. §§ 779.09–11. Under the appellants' view, one construction lien claimant could file an action, name all the other construction lien claimants as defendants (which means they would not join as plaintiffs), then settle with the owner and never initiate a sale. Presumably one of the defendant lien claimants would then have to initiate another action and obtain essentially the same judgment so that, now as a plaintiff, this lien claimant would have the right to initiate a sale. This is not consistent with the purpose of the statutory scheme, which is to provide an expeditious and fair way to satisfy the liens—to the extent possible—of all claimants. *See Erickson*, 191 Wis. at 631–32.

¶ 38. Although we conclude that Water Wells is not precluded from initiating a sale pursuant to the March 2004 judgment on the ground that it is not the plaintiff, the question remains whether it is entitled to a sale in the present circumstances. The appellants argue that, since the circuit court has dismissed all other parties but one to this action,[15] a sale now puts Water Wells in a better position than it was in when the court entered the March 2004 judgment, and in a better position than if it had been named in the AnchorBank action—where its lien was junior to that of AnchorBank and the sale price was less than AnchorBank's mortgage. According to the appellants, we should look to *Buchner* for the proper remedy in these circumstances.[16]

¶ 39. *Buchner*, 241 Wis. at 150, was a quiet title action initiated by persons who had purchased the property as the result of a mortgage foreclosure pro-

[15] City Wide Insulation remains a party along with Water Wells. *See* footnote 3.

[16] The appellants made this same argument in the circuit court but the circuit court did not address it.

ceeding in which a junior judgment lienholder was not a party. The court concluded that the judgment lienholder should not be disadvantaged by not being made a party to the mortgage foreclosure action but that it was entitled to no more than that: it was not entitled to have its lien thereby transformed into a first lien on the property. *Id.* at 152–53. Such a result, the court stated, was "out of all proportion to the culpability involved in neglecting to make [the judgment lienholder a party]." *Id.* at 153. The court concluded that, because a junior lienholder who was a party to a mortgage foreclosure action would have the right to pay the mortgage or redeem the property, the proper remedy was to give the judgment lienholder now the option of redeeming the property; in other words, the purchasers could remove the cloud on their title by compelling the judgment lienholder to either exercise or abandon the right to redeem. *Id.* at 152–53.

¶ 40. Arguing from *Buchner*, the appellants assert that the most Water Wells is entitled to, if we decide all other issues against them, is a right to redeem, or purchase, the property from Brickson. At oral argument, Water Wells acknowledged that "a redemption-type remedy under *Buchner*" would be an appropriate alternative to the sale the court ordered. Water Wells did not argue that the sale was the required remedy.[17]

¶ 41. We conclude that *Buchner* provides the appropriate analysis for Water Wells' remedy at this point in time. Water Wells had the right under the March 2004 judgment to initiate a sale if Carolina Builders did

[17] As we understand Water Wells' position, it considers payment of its lien amount at this time to be an inadequate remedy, even apart from its dispute with the appellants over what amount in addition to the lien it is entitled to at this point in time.

not. However, even though Carolina Builders did not initiate a sale, Water Wells took no action until February 2006, after the sale to Brickson in the AnchorBank action. We agree with the *Buchner* court that ordering another sale at this time is "out of all proportion to the culpability involved in neglecting" to make Water Wells a party in the AnchorBank action. Such a remedy also overlooks the fact that Water Wells failed to initiate a sale under the March 2004 judgment until after the AnchorBank action sale, even though, based on the record before us, there is no reason it could not have done so. Water Wells should not be disadvantaged by not having been joined in the AnchorBank action; but it should not gain an advantage from that, either. Allowing Water Wells the opportunity to purchase the property now, which it would have had the opportunity to do had it been joined in the AnchorBank action, is certainly fair to Water Wells.[18]

¶ 42. We recognize that the junior lienholder in *Buchner* was not a construction lienholder, and that was an action to quiet title, not an action to foreclose construction liens. However, none of the parties here object to the application of the *Buchner* analysis on these grounds. Moreover, as the appellants pointed out at oral argument, if the circuit court's order for another sale is affirmed and a sale takes place that is then confirmed, there will be two owners and that will prompt another lawsuit.

¶ 43. We are satisfied that, although the action to foreclose construction liens provided for in Wis. Stat.

---

[18] We recognize that Water Wells might well have chosen not to bid on the property had it been a party to the AnchorBank action, but the *Buchner* court also commented that was likely the case there. *Buchner v. Gether Trust*, 241 Wis. 148, 153, 5 N.W.2d 806 (1942).

§§ 779.09–13 contemplates a sheriff's sale and equal distribution of the proceeds among all lien claimants, that is not the required outcome in the present circumstances—when no lien claimant initiated a sale under the judgment for twenty months after the first authorized date for a sale; and, in the meantime, a sheriff's sale took place in a mortgage foreclosure action and the liens of some of the construction lien claimants were extinguished.

¶ 44. The parties agree that, if we apply the *Buchner* analysis, a remand to the circuit court is necessary in order to determine the price for which Water Wells may purchase the property. Water Wells asserts that it should be $272,100, the amount for which Brickson purchased the property in 2005, while the appellants assert the circuit court should also consider other facts, such as taxes paid since the purchase and improvements made. We agree that further fact-finding by the circuit court is necessary in order for the court to determine, in equity, the price at which Water Wells may purchase the property and the time period that should be allowed for it to do so; if Water Wells does not purchase the property within that time period at that price, then its lien is extinguished.[19]

---

[19] The appellants make two additional arguments that we do not address because we are not affirming the court's order for a sale. First, they contend the court erred in dismissing all the parties whose rights were adjudicated in the AnchorBank action. At oral argument they explained that their concern was that AnchorBank not be dismissed because, if there is a sale, they intend to argue that the proceeds should go first to them as the successor in interest to AnchorBank's superior lien. Second, they contend the court erred in concluding that they had no right to compel Water Wells to accept the amount of its lien plus the sale costs. Their argument on this point is that the provision

## CONCLUSION

¶ 45. The circuit court correctly concluded that Water Wells did not need to file its own lis pendens and that its construction lien was not extinguished in the AnchorBank action. However, a sale in the present circumstances is not required by the construction lien statute and, applying the analysis in *Buchner*, it would be unfair to Brickson, the purchaser in the AnchorBank action. We therefore conclude that the proper remedy is to give Water Wells the opportunity to purchase the property at a price and within a time period to be established by the circuit court; and if it does not do so, Water Wells' lien will be extinguished. Accordingly, we reverse the court's order for a sale and remand to the circuit court for further proceedings.

*By the Court.*—Orders affirmed in part; reversed in part and cause remanded.

---

in Wis. Stat. § 779.12(1) that "[a]ll sales under judgments in accordance with s. 779.10 . . . shall be absolute and without redemption" means that there is no redemption after *confirmation* of a sale, and confirmation has not yet occurred here.