750 N.W.2d 477 (2008)
2008 WI App 53
Alex ROGERS, a minor by his parents, Julie ROGERS and Dennis Rogers, Julie Rogers, Dennis Rogers, Compcare and First Health Milwaukee County Department of Health and Human Services, Plaintiffs,
v.
Evan K. SAUNDERS, M.D., Sacha Ramirez, M.D., S.C., Physicians Insurance Company of Wisconsin, St. Luke's Medical Center, Aurora Medical Group, Inc. and Wisconsin Patients Compensation Fund, Defendants,
The Medical Protective Company, Defendant-Third-Party Plaintiff-Appellant,
v.
American Casualty Company of Reading, Pennsylvania, Third-Party Defendant-Respondent.
No. 2007AP306.
Court of Appeals of Wisconsin.
Submitted on Briefs November 15, 2007.
Opinion Filed March 5, 2008.
On behalf of the defendant-third-party plaintiff-appellant, the cause was submitted on the briefs of Emile H. Banks, Jr., and Vicki L. Arrowood of Emile Banks & Associates, LLC of Milwaukee.
On behalf of the third-party defendant-respondent, the cause was submitted on the brief of Michael J. Cohen and Pamela J. Tillman of Meissner Tierney Fisher & Nichols, S.C. of Milwaukee.
Before BROWN, C.J., ANDERSON, P.J., and SNYDER, J.
*479 ¶ 1 BROWN, C.J.
The Medical Protective Company ("MedPro") appeals a summary judgment dismissing its claim against American Casualty Company of Reading, Pennsylvania. This litigation began as a medical malpractice claim that settled, with MedPro paying the plaintiffs on behalf of its insured, Aurora Health Care Metro, Inc. MedPro now seeks payment from American Casualty, the liability insurer of Cross-Country Staffing. Cross-Country supplied Aurora with nurses, including the nurse whose negligence allegedly caused the plaintiffs' injuries. MedPro argues that a clause in the staffing agreement between Cross-Country and Aurora requires American Casualty to pay for the liability caused by the nurse's actions.[1]
¶ 2 We affirm the summary judgment in all respects. First, we concur with the circuit court's conclusion that even if Aurora has a contract-based claim against Cross-Country under the staffing agreement, MedPro cannot raise it in this action. We further agree with the circuit court that under WIS. STAT. ch. 655,[2] a nurse employed by a health care provider (as defined by the chapter) has no personal exposure for malpractice liability. Rather, any negligence on the part of the nurse is included in the liability limit of the health care provider and is covered by the provider's insurance. Thus, MedPro, as the insurer of a health care provider, has no tort-based contribution claim for negligence against the nurse  and since her liability would be the basis for any contribution claim against Cross-Country (and thus American Casualty), MedPro has no contribution claim against them, either.
¶ 3 The complaint in the underlying litigation was filed in November 2003, and alleged negligence on the part of two physicians and Aurora in the prenatal care and birthing of Alex Rogers. The complaint also named MedPro and the Patients Compensation Fund[3] as defendants. In September 2005, MedPro filed a third-party complaint against American Casualty. American Casualty insured Cross-Country Staffing, the employer of a nurse who, pursuant to a staffing agreement with Aurora, had cared for Alex's mother. If the nurse was found liable to plaintiffs, MedPro demanded contribution or indemnification from American Casualty.
¶ 4 Later in September, the parties to the original suit settled and in early October the action was dismissed. Also in September, all of the parties (except American Casualty) and the court signed a stipulation and order. The stipulation recited that the nurse had assisted with the mother's labor and delivery, and further that "[a]t all times material to this action . . . [the nurse] was an agent of Aurora Health Care Metro, Inc. d/b/a St. Luke's Medical Center acting within the scope of her agency. Defendant Aurora Health Care Metro, Inc. d/b/a St. Luke's Medical *480 Center will be subject to liability for any negligence of [the nurse] as if she were an employee of such defendant." The stipulation went on to say that MedPro and the Fund would also be liable for the nurse's negligence as if she were an employee of Aurora d/b/a St. Luke's.
¶ 5 In October, American Casualty and MedPro cross-moved for summary judgment on MedPro's indemnification/contribution claim. The circuit court granted summary judgment to American Casualty, holding that WIS. STAT. ch. 655 barred any tort-based contribution claim, and that any contract claim was not before the court. MedPro appealed.
¶ 6 We review a grant of summary judgment de novo, using the same methodology as the trial court. Pinter v. American Family Mut. Ins. Co., 2000 WI 75, ¶ 12, 236 Wis.2d 137, 613 N.W.2d 110. Neither party here asserts that a factual dispute exists, and we agree and conclude that the resolution of this case requires only that we construe statutes and analyze precedent. Our review of such questions of law is likewise de novo. Carolina Builders Corp. v. Dietzman, 2007 WI App 201, ¶ 13, 304 Wis.2d 773, 739 N.W.2d 53, review denied, 2007 WI 134, 305 Wis.2d 130, 742 N.W.2d 527.
¶ 7 We first address MedPro's claim that this case is simply a contract dispute, to which WIS. STAT. ch. 655 has little or no relevance. This argument relies on a clause in the agreement between Cross-Country (American Casualty's insured) and Aurora. The clause reads in relevant part:
Contractor agrees to indemnify and hold harmless the Client, its officers, agents, directors, trustees, and employees from claims and liabilities (including reasonable attorneys' fees and expenses incurred in the defense thereof) relating to any property damage, personal injuries or death ("Damages") arising out of its [sic] acts or omissions of Contractor in connection with Contractor's duties and services provided under this Agreement.
MedPro asserts that this provision in the staffing agreement obligates Cross-Country to cover Aurora's liability arising from the nurse's actions. Cross-Country, however, is not a party to this action. MedPro (presumably acting as the subrogee of Aurora) apparently believes it can nevertheless enforce the Cross-CountryAurora contract against Cross Country's insurer under the direct action statute, WIS. STAT. § 632.24.[4]
¶ 8 This is incorrect. WIS. STAT. § 632.24, the substantive part of Wisconsin's direct action law,[5] provides in part:
Any . . . policy of insurance covering liability to others for negligence makes the insurer liable, up to the amounts stated in the bond or policy, to the persons entitled to recover against the insured *481 . . . for injury to persons or property. . . . .
Section 632.24 allows direct actions against a negligence insurer for negligence claims. It does not allow a plaintiff in a contract action to sue the defendant's insurer. See Biggart v. Barstad, 182 Wis.2d 421, 428, 513 N.W.2d 681 (Ct.App.1994) (the statute "predicates the liability to which an insurer is exposed on the liability of the insured; the right of action against the insurer exists only to the same extent it exists against the insured for his negligence"). If, as MedPro claims, Cross-Country's liability to Aurora is strictly a matter of contract, Aurora is not "entitled to recover against the insured . . . for injury to persons or property." Rather, Aurora is entitled to recover from Cross-Country for breach of contract. If Aurora (or MedPro acting as Aurora's subrogee) wishes to pursue a contractual action against Cross-Country, it is obligated to sue Cross-Country. It does not have the right to sue American Casualty, Cross-Country's insurer.
¶ 9 Thus the only way that MedPro can bring this direct action against American Casualty is if Aurora, to which it is subrogated, has a claim against Cross Country for negligence. Any such claim would in turn be based upon the liability of the nurse in the underlying suit. The key question in this case thus becomes whether Aurora has any contribution claim against the nurse for her alleged negligence in the underlying medical malpractice suit. To begin to address this question, we first note some basic provisions and terms of the state's medical malpractice statute, WIS. STAT. ch. 655.
¶ 10 In 1975, in response to a perceived medical malpractice crisis, the legislature created in WIS. STAT. ch. 655 a new system for medical malpractice claims and insurance. See Wisconsin Patients Comp. Fund v. Wisconsin Health Care Liab. Ins. Plan, 200 Wis.2d 599, 607, 547 N.W.2d 578 (1996); 1975 Wis. Laws, ch. 37, § 1. Chapter 655 constitutes the exclusive procedure and remedy for medical malpractice in Wisconsin. Finnegan ex rel. Skoglind v. Wisconsin Patients Comp. Fund, 2003 WI 98, ¶ 22, 263 Wis.2d 574, 666 N.W.2d 797. Health care providers are required to insure their liability up to a prescribed amount. WIS. STAT. § 655.23(3), (4). A health care provider or the provider's insurer is responsible for liability up to this amount (or the policy limit, if it is greater) and any liability above that amount is paid by the Fund. Wis. STAT. § 655.27. The statute defines "health care provider" to include a "physician or a nurse anesthetist," WIS. STAT. §§ 655.001(8), 655.002(1)(a), and also to include a hospital or any corporation, partnership or other organization whose primary purpose is providing the medical services of physicians or nurse anesthetists. Sec. 655.002(1)(d)-(em), (h).
¶ 11 So, under WIS. STAT. ch. 655, Aurora is a health care provider. The nurse in this case, not being a nurse anesthetist, is not. And though the nurse apparently worked for Cross-Country Staffing, the parties to this case stipulated that she was an employee of Aurora for liability purposes. Thus we can restate the key question above as follows: Whether, in a medical malpractice case, the insurer of a health care provider can seek contribution from a non-health-care-provider employee for his or her negligence.
¶ 12 The guiding case on this question is Patients Compensation Fund v. Lutheran Hospital-LaCrosse, Inc., 223 Wis.2d 439, 588 N.W.2d 35 (1999). That case had similar underlying facts: an injured patient and his parents sued a doctor, various other health care providers, an insurance company and the Fund. Id. at 445, 588 N.W.2d 35. The underlying claims settled, *482 with the Fund paying out the vast majority of a $10,000,000 settlement. Id. at 446, 588 N.W.2d 35. The Fund then sued various parties for contribution, including nurses who had treated the original plaintiff. Id. In particular, the Fund pursued the one nurse who had professional liability insurance (along with her insurer) for subrogation up to her policy limit. Id. at 447, 588 N.W.2d 35; see also Patients Comp. Fund v. Lutheran Hosp.-LaCrosse, Inc., 216 Wis.2d 49, 52, 573 N.W.2d 572 (Ct.App.1997).
¶ 13 On review, the supreme court phrased the question presented as "whether the Fund has subrogation rights which would allow it to commence an action for contribution against an allegedly negligent employee of a health care provider and/or the employee's insurer, following the Fund's settlement of a malpractice claim against the health care provider." Lutheran Hospital, 223 Wis.2d at 451, 588 N.W.2d 35. The court then turned to WIS. STAT. ch. 655 to search for the answer. Lutheran Hospital, 223 Wis.2d at 456, 588 N.W.2d 35. Finding no express statement on the issue, the court declared the statute ambiguous. Id. It thus began the usual statutory construction inquiry. Id.
¶ 14 The court observed that the legislature designed both WIS. STAT. ch. 655 and the Fund to hold down costs and maintain the availability of heath care in the state. See Lutheran Hospital, 223 Wis.2d at 456-57, 588 N.W.2d 35. It went on to say that
one of the ways in which ch. 655 accomplishes this objective is by including any malpractice liability on the part of a non-health care provider conducting the business of a health care provider within the insurance limit of the health care provider. In this way, each person conducting the health care provider's business is not required to go out and buy his or her own malpractice insurance. A holding that the liability of those conducting a health care provider's business is not covered under the health care provider's primary insurance cap would encourage each of those persons to protect himself or herself by obtaining his or her own professional liability insurance coverage. This scenario would likely increase the cost of health care and decrease its availability, as those who could not afford to purchase insurance to protect themselves might choose to exit the health care field or to charge more for the services provided. Such a result would be contrary to the underlying purpose of ch. 655.
Id. at 457, 588 N.W.2d 35.
¶ 15 In support of its conclusion that the malpractice liability of a non-health care provider conducting the business of a health care provider is included within the provider's insurance cap, the court examined several provisions of WIS. STAT. ch. 655. Of particular importance was WIS. STAT. § 655.23(5), which provides that as long as a health care provider insures itself as the chapter requires, the provider and those conducting the provider's business are liable only up to the higher of the statutory minimum insurance or the provider's policy limits. The court observed that nowhere is there any mention of the amount for which one conducting the provider's business is insured. Lutheran Hospital, 223 Wis.2d at 458, 588 N.W.2d 35. The court further noted WIS. STAT. § 655.005(2), which directs the Fund to cover "claims against the health care provider or the employee of the health care provider due to the acts or omissions of the employee acting within the scope of his or her employment and providing health care services." Lutheran Hospital, 223 Wis.2d at 458-59, 588 N.W.2d 35. Along with WIS. STAT. § 655.27(1) and (5)(d), the court concluded, these statutes demonstrated *483 the legislature's intention that the Fund cover claims in excess of the health care provider's coverage limits, whether those claims are against the provider or the provider's employees. Lutheran Hospital, 223 Wis.2d at 459, 588 N.W.2d 35.
¶ 16 MedPro correctly points out that the precise holding of Lutheran Hospital does not encompass the facts at issue here. That holding, in the words of the court, was that
any liability of a non-health care provider which arises while he or she is conducting a health care provider's business, together with the liability of the health care provider itself, is limited to the amount of primary coverage mandated by WIS. STAT. § 655.23(4) or the amount of coverage actually carried by the health care provider, whichever is greater. See § 655.23(5). Since the Fund is required by WIS. STAT. § 655.27(1) to pay any amounts in excess of this limit, the Fund does not have subrogation rights to bring an action for contribution against one conducting a health care provider's business who does not independently qualify as a health care provider, or his or her insurer.
Lutheran Hospital, 223 Wis.2d at 460, 588 N.W.2d 35. Obviously, the holding speaks only of the subrogation rights of the Fund, and not those of any other insurer.[6] Further, though it says that the liability of one conducting a health care provider's business is limited to the provider's policy limit, it does not explicitly say that it is the provider's insurance that must cover the liability. Nevertheless, after careful consideration of the relevant statutes and Lutheran Hospital, we are convinced that Lutheran Hospital's reasoning extends to this case.
¶ 17 First, the same statutes that the Lutheran Hospital court relied on support the conclusion that a health care provider's insurer is, effectively, the insurer of an employee who is conducting the provider's business.[7] WISCONSIN STAT. § 655.23(5) limits the liability of a health care provider, and also those conducting the health care provider's business, to the minimum statutory insurance amount or the provider's actual policy limit, whichever is higher. As the Lutheran Hospital court noted, there is no reference in the subsection to anyone's insurance but the health care provider's. Lutheran Hospital, 223 Wis.2d at 458, 588 N.W.2d 35. It would make little sense for the legislature to tie the liability limit of those conducting a health care provider's business to the provider's policy limit if it did not also intend for the provider's policy to cover *484 that liability. Even more persuasive is WIS. STAT. § 655.27(5)(d), which states that a person who has obtained a judgment or settlement against a health care provider or the employee of a health care provider may file a claim with the Fund for the amount of that settlement or judgment in excess of the statutory limit or the policy limit of the health care provider, whichever is greater. Together, these two statutes tell us: (1) that a health care provider's employee's liability is limited by the provider's policy limit (if higher than the statutory minimum); and (2) that an injured patient can file a claim with the Fund if he or she obtains a judgment against a provider's employee that is more than the provider's policy will cover. This only makes sense if the provider's policy is available to cover the liability of the provider's employee.[8]
¶ 18 Second, though the language of the holding in Lutheran Hospital refers to the facts then before the court, much of the discussion and reasoning of the opinion suggests a broader applicability. For example, the court stated that it agreed with the plaintiff's argument that "because [the nurse's] alleged negligence arose within the scope of her employment for a ch. 655 health care provider, ch. 655 limits [the nurse's] malpractice liability to the $400,000 amount covered by Lutheran Hospital's primary liability insurance policy." Lutheran Hospital, 223 Wis.2d at 455, 588 N.W.2d 35 (emphasis added). Later, the court added that "any liability of a non-health care provider which arises while he or she is conducting a health care provider's business, together with the liability of the health care provider itself, is limited to the amount of primary coverage mandated by WIS. STAT. § 655.23(4) or the amount of coverage actually carried by the health care provider, whichever is greater." Lutheran Hospital, 223 Wis.2d at 460, 588 N.W.2d 35. Finally and most explicitly, the court noted that "[the nurse's] alleged liability is covered under Lutheran Hospital's liability insurance, and the Fund is required by ch. 655 to pay the rest." Lutheran Hospital, 223 Wis.2d at 461-62, 588 N.W.2d 35 (emphasis added).
¶ 19 We conclude that although the ultimate holding of Lutheran Hospital dealt with the subrogation rights of the Fund, the court's reasoning in the case also controls the outcome of this litigation between non-Fund insurers. In fact, the Lutheran Hospital holding was the end result of a chain of logic that includes the proposition that governs this case. The court essentially reasoned that under Wis. STAT. ch. 655, a health care provider and its nonprovider employees are treated as a unit for liability purposes. See Lutheran Hospital, 223 Wis.2d at 460, 588 N.W.2d 35. Therefore, any liability for an employee's negligence is covered by the provider's insurance so long as the employee is conducting the provider's business. See id. at 461-62, 588 N.W.2d 35. It is this second logical step that governs this case and bars any tort contribution claim by MedPro. The Lutheran Hospital court relied on this second step to reach a third: because the nurse's liability was included in the provider's insurance limit, the Fund was statutorily responsible for any amounts in excess of the limit. See Lutheran Hospital, 223 *485 Wis.2d at 460, 588 N.W.2d 35.[9]
¶ 20 Here, likewise, any liability for the nurse's negligence belongs to Aurora and its insurer, MedPro. MedPro may not seek contribution from the nurse; and thus it may not seek it from her employer, Cross-Country, or Cross-Country's insurer, American Casualty. Because any possible contractual claim between Cross-Country and Aurora is not before this court, we express no opinion on its merits, or on American Casualty's duty to defend or cover any such claim.
Judgment affirmed.
NOTES
[1] The complaint and settlement in this case include as defendants Aurora Health Care Metro, Inc., Aurora Medical Group, Inc., and St. Luke's Medical Center. All are related entities whose specific relationship is irrelevant to this appeal, and for simplicity's sake we will refer to all as "Aurora." Also, technically, the staffing agreement at issue is between Cross-Country and Diversified Care, Inc.Diversified is apparently also an Aurora-affiliated entity that we will likewise call "Aurora."
[2] All references to the Wisconsin Statutes are to the 2005-06 version unless otherwise noted.
[3] The legislature changed the Fund's name from "Patients Compensation Fund" to "Injured Patients and Families Compensation Fund" in 2004. See 2003 Wis. Act 111, § 1.
[4] We say "apparently" because MedPro does not outright assert that it can sue under WIS. STAT. § 632.24, but only that there is nothing in that statute that precludes it from making its contract claim in this case. Strictly speaking, this is correct. Section 632.24 does not prevent MedPro's contract claim; what prevents the claim is the general principle that only a party to a contract may sue on it. See Dorr v. Sacred Heart Hospital, 228 Wis.2d 425, 449, 597 N.W.2d 462 (Ct.App.1999). What § 632.24 does is make an exception to this general rule for insurance contracts in negligence cases, allowing a plaintiff to, in effect, sue to enforce the defendant's insurance contract. MedPro's claim does not fall into this exception and is thus subject to the general rule: it may not enforce Cross-Country's insurance contract against American Casualty.
[5] The procedural statute is WIS. STAT. § 803.04(2)(a).
[6] As MedPro points out, the Lutheran Hospital court also said that because the Fund was created by WIS. STAT. ch. 655, the court would look to that chapter to determine whether the Fund had the authority to bring suit. Patients Comp. Fund v. Lutheran Hosp.-LaCrosse, Inc., 223 Wis.2d 439, 454, 588 N.W.2d 35 (1999). The court said this in response to the Fund's claim that ch. 655 governs only malpractice suits by patients against health care providers, and not subrogation claims by the fund. Lutheran Hospital, 223 Wis.2d at 453, 588 N.W.2d 35. MedPro attempts to draw a distinction between that case and this one on the grounds that it is "not governed by the same provisions of ch. 655 which form the basis of the court's decision in Lutheran Hospital." But as we have noted, ch. 655 provides the exclusive procedure and remedy for malpractice claims in Wisconsin; it undoubtedly governs the rights and responsibilities of malpractice insurers. The provisions we analyze below suggest that the provisions of ch. 655 bar any tort contribution claim by MedPro in this case, and MedPro offers no statutory argument to suggest otherwise.
[7] Cf. Wright v. Mercy Hosp. of Janesville, Wis., 206 Wis.2d 449, 457, 459, 557 N.W.2d 846 (Ct.App.1996) (allowing a hospital to seek contribution from a nurse for negligence outside the scope of her employment).
[8] Further supporting this conclusion are WIS. STAT. § 655.005(1), which states that a person with a claim against the employee of a health care provider is subject to the chapter, and § 655.005(2)(a), which states that the Fund will cover claims against employees of health care providers  unless they are physicians or nurse anesthetists (who themselves are health care providers and thus are required to have their own insurance).
[9] Though federal court decisions are not binding authority on state law issues, we note that the District Court for the Western District of Wisconsin has reached a conclusion similar to our own based on its reading of Lutheran Hospital. See Cooper v. Eagle River Memorial Hosp., Inc., No. 99-C-722-C, 2000 WL 34236737, at *4 (W.D.Wis. July 21, 2000) (dismissing a nurse practitioner from a medical malpractice action because, as a nonhealth care provider employee, he was "not subject to personal liability for medical malpractice under Wis. Stat. ch. 655").